UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH J. BOOKLESS, ) | |
| ) | |
| Plaintiff, ) | No. 3:03 CV 123 (WWE) |
| ) | |
| v. ) | |
| ) | |
| RANDY IRELAND, JERRY SCULLY, ) | June 22, 2006 |
| BART DEELEY & ) | |
| RAYMOND WALSH, ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE*
REGARDING EVIDENCE, TESTIMONY AND ARGUMENT AT TRIAL**

Plaintiff Joseph J. Bookless submits the following memorandum of law in opposition to the Motion *in Limine* Regarding Evidence, Tesitmony and Argument at Trial ("Mot.") submitted by defendants Randy Ireland, Jerry Scully, Bart Deeley, and Raymond Walsh.

Defendants seek to preclude evidence and testimony concerning: (1) other incidents of dog bites by the police canine "Argo"; (2) other lawsuits against the defendants; (3) other citizen complaints against Defendants or other members of the Naugatuck Police Department; and (4) internal affairs investigations or discipline within the Naugatuck Police Department.

Plaintiff submits that he will not seek to introduce any evidence at this trial of Defendants' prior acts for the purpose of demonstrating Defendants' propensity to violate Plaintiff's civil rights. Nor will he seek to introduce evidence of other acts taken by Defendants in order to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Plaintiff does, however, seek to introduce

evidence of K-9 Argo's history, and Defendant Bart Deeley's prior usage of Argo, for other purposes. He also intends to question Defendant Bart Deeley on a prior arbitrator's finding of liability that Deeley denied during his deposition for the purpose of attacking his credibility, and to offer extrinsic evidence of Defendants' prior bad acts if any of the Defendants open the door to such inquiry by testifying at trial that he possesses an unblemished character, reputation, or record.

Use of prior act evidence for these purposes is proper for the reasons stated below.

### I.   STANDARD OF REVIEW

As Defendants noted in their Memorandum of Law in Support of Motion *in Limine* Regarding Evidence, Testimony and Argument at Trial (Def. Mem.), the Second Circuit has adopted an "inclusionary approach" to admitting "other act" evidence. (*See* Def. Mem. at 3-4 (citing, *inter alia*, *Berkovich v. Hicks*, 922 F.2d 1018).) The inclusionary approach "allows evidence to be received at trial for any purpose other than to attempt to demonstrate the defendant's 'criminal propensity.'" *United States v. Edwards*, 342 F.3d 168, 176 (quoting *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir.2002)). A reviewing court determining whether other act evidence was properly admitted will consider whether: "(1) it was offered for a proper purpose; (2) it was relevant to a disputed trial issue; (3) its probative value is substantially outweighed by its possible prejudice; and (4) the trial court administered an appropriate limiting instruction." *Id.* (citing *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992)).

## II.    DISCUSSION

A.    <u>Plaintiff Will Use Defendants' Prior History For Proper Purposes</u>

Plaintiff intends to solicit testimony and offer exhibits that describe the history of Argo's training and usage by Deeley for the purpose of filling in the story of Deeley's training and experience as a K-9 officer.

This evidence will be directly relevant to Plaintiff's case at trial. The jury will not familiar with the training and proper usages of a police dog, nor will it be familiar with Deeley's level of expertise and experience with using Argo for various purposes. Deeley's prior training and experience with Argo are directly relevant to the questions of whether Deeley actually intended to release Argo to attack Plaintiff when he did so; what commands would need to be given in order to get Argo to attack; whether Deeley normally warns suspects of his intent to release Argo before Argo is released; and other issues relevant to the jury's understanding of the proper training in, and use of, a police dog. Moreover, the issue will be relevant to Deeley's intent in at least two respects. It will not only help the jury understand whether Argo's attack on Plaintiff was the result of an intentional act by Deeley; it will also be relevant to the determination of whether Deeley's acts were done maliciously or with reckless indifference to Plaintiff's federally protected rights, as Plaintiff will be required to prove in order to establish his right to punitive damages.

Among the evidence of Argo's prior usage that Plaintiff intends to show in support of his story at trial is the Naugatuck Police Department K-9 Usage Log, dated Aug. 21, 2002. The K-9 Usage Log, which was compiled by Deeley and others from incident reports involving K-9s, documents the use of K-9 Argo against Plaintiff. The K-9 Usage Log states that Plaintiff was

injured as a result of Argo's "usage," but that neither Argo nor any police officer was hurt during Plaintiff's arrest. The log also contains entries indicating that Argo had been used to apprehend suspects, track scents, and engage in other K-9 activities on numerous occasions before he was used against Plaintiff.

Plaintiff will not offer evidence that any of the prior occasions on which Argo was used was improper. Rather, he intends to use this evidence of prior acts, and prior training, in support of the argument that Deeley's conduct on May 22, 2000, the date of Plaintiff's arrest, was unconstitutional.

Under the Second Circuit's inclusionary approach, such a use of Deeley's prior training with and usage of Argo is proper. The evidence will be offered for a proper purpose and will be relevant to several disputed trial issues. Moreover, its probative value in establishing Defendants' liability and Plaintiff's entitlement to punitive damages is not substantially outweighed by its possible prejudice, given that Plaintiff will not use this evidence to establish that any prior occasion on which Argo was used was improper. Finally, the Court may give a limiting instruction reinforcing the fact that the introduction of this evidence should not be used to establish Defendants' propensity to commit the acts of which they are accused by Plaintiff should Defendants request one, thus sharply limiting any prejudicial effect that introduction of prior act evidence might otherwise have. *See Edwards*, 342 F.3d at 176.

B.   <u>Plaintiff May Impeach Defendants Character for Truthfulness Using Evidence of Prior Bad Acts</u>

Defendant intends to question Defendant Bart Deeley on a prior arbitrator's finding of liability that Deeley denied during his deposition for the purpose of attacking his character for truthfulness. Such an inquiry is permissible under Fed. R. Evid. 608(b), even if Plaintiff will not

4

be permitted to offer extrinsic evidence at trial of Deeley's false answers to Plaintiff's questions at his deposition. *See Lewis v. Baker*, 526 F.2d 470, 475 n.7 (2d Cir. 1975) (permitting inquiry into false statements on job application to impeach character for truthfulness).

C.      Plaintiff May Impeach Defendants with Prior Bad Acts if Defendants Open the Door

Defendants may assert that they have an unblemished character or record of conduct concerning civilian complaints or litigation involving accusations of excessive force. If they do so, Plaintiff may seek to introduce information regarding prior bad acts against any Defendant who makes this assertion under the authority of *United States v. Benedetto*, 571 F.2d 1246, 1250 (2d Cir. 1978), which permitted introduction of evidence concerning a defendant's prior bad acts where the defendant had opened the door to such inquiry by his own denials of prior bad acts. *See id.* ("Once a witness (especially a defendant-witness) testifies as to any specific fact on direct testimony, the trial judge has broad discretion to admit extrinsic evidence tending to contradict the specific statement, even if such statement concerns a collateral matter in the case.").

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks this Court to deny Defendants' Motions *in Limine* for the reasons set forth above.

DATED: June 22, 2006

_____
Howard Master (ct26855)
Rachel Amankulor (ct26965)
WIGGIN AND DANA LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Tel: 203-498-4400
Fax: 203-782-2889
E-mail: hmaster@wiggin.com


Attorneys for Plaintiff

CERTIFICATE OF SERVICE

On June 22nd, 2006, I caused to be served upon counsel of record, at the address stated below, via the method of service indicated, a true and correct copy of the foregoing:

|     |     |
| --- | --- |
| ___ | Via hand delivery |
| ___ | Via U.S. Mail, 1st Class, Postage Prepaid |
| _X_ | Via Overnight Delivery |
| ___ | Via Facsimile |
| ___ | Via E-filing |

I certify under penalty of perjury under the laws of the State of Connecticut that the foregoing is true and correct.

DATED at New Haven, CT, this 22nd day of June, 2006

_____
Howard Master