UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH J. BOOKLESS,<br>    Plaintiff, | : | NO. 3:03CV123(WWE) |
| vs. | | |
| RANDY IRELAND, JERRY SCULLY,<br>BART DEELEY AND RAYMOND WALSH,<br>    Defendants. | : | JUNE 23, 2006 |

### DEFENDANTS' OBJECTION TO THE PLAINTIFF'S MOTION IN LIMINE REGARDING INCIDENT AND PRIOR CONVICTIONS

**I.    Introduction**

Defendants Randy Ireland, Jerry Scully, Bart Deeley and Raymond Walsh, respectfully object to the plaintiff's Motion in Limine to Exclude Certain Evidence Regarding Incident and Prior Convictions. In particular, the defendants object to the plaintiff's effort to obtain a blanket prohibition regarding relevant evidence in the form of testimony from Donna Grillo and Aynslee Lenktaitis, who are in the unique position of having observed Mr. Bookless's physical condition and demeanor in the moments immediately preceding his interaction with the defendants. As more fully explained below, Ms. Grillo saw Mr. Bookless immediately before, and after, his encounter with the

defendants and she should be allowed to testify regarding his physical condition and demeanor. This argument applies equally to the testimony of Ms. Lenktaitis.

In addition, the plaintiff has sought to pick and choose which of his prior convictions he will allow the jury discover, presumably so that he may seek their sympathy for having received a stiff 25 year sentence for the armed robbery that underlies this matter. As more fully explained below, the only reason the plaintiff was given so harsh a sentence is because of his long string of felony convictions, including his 2002 conviction as a persistent offender under Connecticut General Statutes §53a-40a. Since the plaintiff has indicated his plan to disclose to the jury that he is serving a 25 year sentence, there is no danger that he will be prejudiced.

II. **Ms. Grillo and Ms. Lenktaitis Should be Allowed to Testify Regarding Their Observations of the Plaintiff's Demeanor, Mental State, and Physical Condition**

Relevant evidence is that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed.R.Evid. 401. Although the

KARSTEN & DORMAN, LLC • ATTORNEYS AT LAW
29 SOUTH MAIN STREET • WEST HARTFORD, CT 06107 • (860) 521-4800 • FAX (860) 521-7500 • JURIS NO. 424030

primary issue in this case is whether the defendants used reasonable force on May 22, 2000, when they arrested the plaintiff for armed robbery, among the facts vigorously contested are (1) whether the plaintiff was combative or compliant when he encountered the defendants and (2) whether the plaintiff was seriously injured during his arrest.

Donna Grillo is perhaps the only witness who observed Mr. Bookless immediately before, and after, his encounter with the defendants. Accordingly, she should be allowed to testify regarding her observations of Mr. Bookless, his demeanor, and his physical condition before and after his arrest.

The expected evidence will show that, on May 22, 2000, Aynslee Lenktaitis made a 911 call at approximately between 4:07 and 4:09 p.m. At that very moment, Donna Grillo chased plaintiff Joseph Bookless out of her store located at 413 North Main Street, Naugatuck, Connecticut, and toward a foot bridge near Route 8. Within moments of that 911 call, Lt. Jerry Scully encountered the plaintiff within a half mile of Ms. Grillo's store. Within minutes of Lt. Scully's encounter with the

- 3 -

KARSTEN & DORMAN, LLC • ATTORNEYS AT LAW
29 SOUTH MAIN STREET • WEST HARTFORD, CT 06107 • (860) 521-4800 • FAX (860) 521-7500 • JURIS NO. 424030

plaintiff, the plaintiff was in custody and Ms. Grillo was brought to see him to make an identification. Thus, Ms. Grillo observed the plaintiff at crucial moments before and after his arrest by the defendants.

Although the plaintiff claims grievous injuries, including a fractured ankle, facial lacerations, and dog bites, Ms. Grillo is expected to testify that when she observed the plaintiff after his arrest, he was standing. She is expected to testify further regarding his demeanor and physical condition before and after his arrest. Ms. Grillo's observations of the plaintiff all occurred within approximately a half hour period on May 22, 2000. Her observations are indisputably relevant to show the plaintiff's physical condition, demeanor, mental state, and the severity of his alleged injuries. Similarly, Ms. Lenktaitis is expected to portray a picture of the plaintiff that is starkly at odds with the plaintiff's expected testimony that he was compliant, cooperative and acting rationally.

Without doubt, the testimony of both Ms. Grillo and Ms. Lenktaitis is relevant to show the plaintiff's demeanor,

KARSTEN & DORMAN, LLC • ATTORNEYS AT LAW
29 SOUTH MAIN STREET • WEST HARTFORD, CT 06107 • (860) 521-4800 • FAX (860) 521-7500 • JURIS NO. 424030

physical condition, and alleged injuries or lack thereof, both before and after his encounter with the defendants on May 22, 2000. Both witnesses should be allowed to testify regarding their first hand observations of the plaintiff. This is especially true since the plaintiff has indicated that he "will not hide from the fact that he was convicted of robbery in the first degree, in violation of General Statutes §53a-134, and interfering with an officer, in violation of General Statues §53a-167a, for his conduct on May 22, 2000. . . [n]or does he seek the exclusion of his 1990 conviction and sentence for robbery." Plaintiff's Motion in Limine at 8-9.

Given the fact that the plaintiff plans to acknowledge his conviction for the armed robbery, among other convictions, he will not be prejudiced by the jury hearing testimony from Ms. Grillo or Ms. Lenktaitis concerning their observations of the plaintiff. See Velez v. Lewis, 149 F.R.D. 474, 482 (S.D.N.Y. 1993) (where jury knows that witness is a convicted felon, admission of additional felony convictions is of little consequence)

KARSTEN & DORMAN, LLC • ATTORNEYS AT LAW
29 SOUTH MAIN STREET • WEST HARTFORD, CT 06107 • (860) 521-4800 • FAX (860) 521-7500 • JURIS NO. 424030

III. **The Plaintiff's Conviction for Assaulting a Peace Officer and his Persistent Offender Conviction Should be Admitted**

There is no dispute that, as a result of his arrest by the defendants on May 22, 2000, the plaintiff was convicted of armed robbery, interfering with an officer, and being a persistent felony offender and was sentenced to an effective term of 25 years. The plaintiff has consented to the admission of the armed robbery and interfering charge, presumably so he can argue to the jury that he has paid a heavy price for his misdeeds via his 25 year sentence. But the plaintiff has argued that his persistent offender conviction should be concealed from the jury because it would be unduly suggestive to the jury of a criminal character. Plaintiff's Motion in Limine at 11.

The problem with the plaintiff's argument is that, if the jury is left with the false impression that the plaintiff was sentenced to 25 years for just the armed robbery and the interfering charge, they will likely not understand how such a long sentence could be meted out and may actually hold that against the defendants if they find the plaintiff to a

- 6 -

sympathetic character.[1]  The reason for the harsh sentence was recited by the sentencing judge, who noted as follows, "[b]ut the problem is your record.  It includes fourteen previous felony felonies and five of them are robbery related.  And I'm stuck with that."  State v. Joseph Bookless, No. CR00-290382, Sentencing on 6/12/03 at 5 (attached as Exhibit A).  The jury should be presented with the full set of convictions resulting from the plaintiff's May 22, 2000 arrest that underlies this incident.

As the Court held in Velez v. Lewis, 149 F.R.D. 474, 482 (S.D.N.Y. 1993), "where the jury knows that a witness is a convicted felon, admission of prior crimes may cause relatively little additional prejudice." (internal citations omitted).  The defendants do not seek to inform the jury of all of the plaintiff's prior felony convictions, but in addition to those that the plaintiff has consented to introduce, certainly the plaintiff's 2002 persistent felony offender conviction that

---

[1] Absent the persistent felony offender conviction, the plaintiff appears to have been facing a maximum sentence far below the twenty five years he received.  See Conn. Gen. Stat. §53a-134 and 53a-167a.

- 7 -

KARSTEN & DORMAN, LLC • ATTORNEYS AT LAW
29 SOUTH MAIN STREET • WEST HARTFORD, CT 06107 • (860) 521-4800 • FAX (860) 521-7500 • JURIS NO. 424030

arose from the very arrest at issue in this case should be admitted. Based upon this reasoning, both the plaintiff's 2002 persistent felony offender conviction and his 1998 conviction for assaulting a peace officer should be admitted because they are both less than 10 years old and the prejudice to the plaintiff, if any, is negligible. Fed.R.Evid. 609(b); see also Velez, 149 F.R.D. 474, 482.

### IV.  Conclusion

For all of the foregoing reasons, the defendants request that the Court deny the plaintiff's motion in limine.

DEFENDANTS, RANDY IRELAND,
JERRY SCULLY, BART DEELEY and
RAYMOND WALSH

BY_____
James N. Tallberg
Federal Bar No.: ct17849
Karsten & Dorman, LLC
29 South Main Street
West Hartford, CT 06107
Their Attorney
jtallberg@karstendorman.com

KARSTEN & DORMAN, LLC • ATTORNEYS AT LAW
29 SOUTH MAIN STREET • WEST HARTFORD, CT 06107 • (860) 521-4800 • FAX (860) 521-7500 • JURIS NO. 424030

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, this 23rd day of June, 2006, to the following counsel of record:

Howard S. Master, Esq.
Rachel Amankulor, Esq.
Wiggin and Dana, LLP
One Century Tower
P. O. Box 1832
New Haven, CT 06508

_____
James N. Tallberg

```
STATE OF CONNECTICUT, SUPERIOR COURT

JUDICIAL DISTRICT OF WATERBURY


In the Matter of:

 *  *  *  *  *  *  *  *  *  *x

STATE OF CONNECTICUT              :     Case Number CR00-290382

     -versus-                     :


JOSEPH BOOKLESS                   :     JUNE 12, 2002

 *  *  *  *  *  *  *  *  *  *x



                         SENTENCING




B E F O R E:

             HONORABLE THOMAS V. O'KEEFE, JR.,

                                              Judge




A P P E A R A N C E S:


        JOHN DAVENPORT, ESQ.
             Assistant State's Attorney

        DENNIS HARRIGAN, ESQ.
             Assistant Public Defender




                                    Patricia Sabol
                                 Certified Court Reporter
```

2

1  THE COURT: All right. The defendant's here, and
2  this is the sentencing on State versus Joseph
3  Bookless. On a previous date he was convicted of
4  robbery in the first degree and interfering with an
5  officer, and he pled guilty to being a persistent
6  dangerous felony offender.
7  I read the PSI. I read a letter from a friend of
8  his, Ms. Bredeau. I don't know if you knew about
9  that, but she said you're a nice person. So didn't
10 hurt you at all. And we're ready for sentencing.
11 MR. DAVENPORT: Yes, your Honor. Looking at the
12 PSI, if Mr. Bookless was a young man, I'd be asking
13 for a long period, I mean really long period of
14 incarceration. I'm taking into account the fact he's
15 50 years old. Man spent a long time in jail, probably
16 institutionalized to a degree I can't understand.
17 What's bothersome is when he did get released the last
18 time, he had a family helping him. He had a job. I
19 mean for people coming out of jail he had more things
20 going for him than almost anybody else I've seen in
21 the thirteen years I have been in the building. And
22 for reasons that I don't even think he understands he
23 still felt obliged to go out to steal for a drug habit
24 that seems to rule his life, by his own admission.
25 THE COURT: We're not heroin addicts. We don't
26 understand the compulsion they deal with. We never
27 can, unless you're addicted.

1        MR. DAVENPORT: I appreciate that. I understand
2   what you're saying, and I agree with you. I can't
3   understand it. But by the same token --
4        THE COURT: We got to deal with it.
5        MR. DAVENPORT: Yes, your Honor, we do have to
6   deal with it and every day of our lives as long as
7   we're in this system.
8        That young girl was really shaken by what
9   happened that day. And Ms. Grillo, also. They lived
10  charmed lives. They never had anything like this
11  happen. And one afternoon in a couple minutes that
12  shattered for them a lot of how they feel about the
13  world.
14       It's really, really tough to find -- redeeming is
15  a harsh word. I'm sure Mr. Bookless at times is a
16  decent man, but he has these issues, and he's
17  dangerous to people because it's only a matter of time
18  before someone could get badly hurt, either him or
19  somebody responding to him. And so I'm going to ask
20  the Court for a period of incarceration of 35 years.
21       MR. HARRIGAN: Thank you, your Honor.
22       Your Honor, these are some of the more difficult
23  moments in one's personal career here. Obviously the
24  PSI speaks for itself. This gentleman has a long
25  history dating back to 19 -- in the 70's. He is 50
26  years old. The only thing I can say what I know about
27  Mr. Bookless is the fact as I represented him he was

not on heroin, was not on drugs. He's been a perfect gentleman. One of the better clients I've had as far as behavior, conversation-wise. And he generally appears to be a nice person.

You look at what he is when he's not on drugs and look at some of the things he has done and had done in this case and you wonder how a person like this could do something like that. It's not an excuse. Drugs is not an excuse. He knows that. We know that. We have to deal with it. It's just a shame that unfortunately the person that's sitting here now has to pay for the acts of that person, too. So it's a Jekyll and Hyde situation, and Jekyll has to pay for Mr. Hyde's mistakes.

He is 50 years old. The Court has a job to do. And I think the Court would be fair in doing that job. And he realizes that it literally has his life in his hands. And that's all that I'm going to say about this case.

I don't know if Mr. Bookless has anything -- he'd like to address the Court.

THE COURT: What do you want to tell me?

THE DEFENDANT: You know just everything that everybody said, everybody is right. I'm not the person I am that did that, you know. I know that not too many people do know it. But then again I do things like that. And Mr. Davenport is right because

the drugs control. I let drugs control my life. And now I'm in a position where I don't have too much life left. And I never really said this before, right, but I know that if I ever do get out again, I know one thing I don't have to worry about is ever doing drugs again. I'll probably be too old for one thing, but I made my mind up when I got arrested this time that was it. If I ever did get out, whatever I had left to do, you know, if I had any life left at all I wasn't going to live it on the street.

THE COURT: Okay. I wish you had made that decision before your last arrest.

Anything else you want to tell me?

THE DEFENDANT: No, your Honor.

THE COURT: You can sit down for a minute.

Sometimes as a judge you get a bad reaction to a defendant because they're mean and they're defiant. It just doesn't bother you when you lock them up for the rest of their lives. But I didn't get that reaction probably because you're my age and you don't seem that menacing here in court. Nobody had any problems with you. But the problem is your record. It includes fourteen previous felonies and five of them are robbery related. And I'm stuck with that. Believe it or not sometimes judges look for an out because they don't want to really send somebody to prison for the rest of their lives. And I went

1  through the PSI looking for an out here and there
2  isn't any.
3      You really sealed your fate when you took that
4  first trip with heroin because from what I understand,
5  one episode can cause a craving for it the rest of a
6  person's life.  And that's what it looks like happened
7  to you.  And people who don't deal with this
8  compulsion and craving and go about their every day
9  business in a logical way just can't understand.  You
10 can come close to understanding what a person's
11 compulsion is when you study how much a person has
12 given up in order to get high.  You've given up your
13 whole life just to stay high.  So it must be a pretty
14 difficult thing to deal with.  And you haven't been
15 able to deal with it even up to the age of 50.  And
16 there's no indication that despite your best
17 intentions that you could deal with it if you got out
18 again.
19     And my duty and my obligation as a sentencing
20 judge is to protect people in the future who might be
21 the victims of your actions if you got on the street.
22 I can't allow that.  So I got to do my duty here, even
23 though it doesn't make me that happy.
24     All right.  You can stand up.
25     On the count of robbery in the first degree I'll
26 sentence you to the custody of the Commissioner of
27 Corrections for a period of 25 years, and I'll place

```
 1    you on special parole for 15 years.  On the
 2    interfering with an officer I'll sentence you to the
 3    custody of the Commissioner of Corrections for a
 4    period of one year.  That's concurrent with the 25
 5    year sentence.  The effective sentence is 25 years to
 6    serve, 15 years special parole.
 7        The way the sentence is structured, when you are
 8    an elderly man -- you're not elderly now -- but when
 9    you are an elderly man, you may spend a period of time
10    free.  And you have a family and they're nice people
11    from what I read about them.  I hope they're all still
12    alive.  I hope you have a lot of nieces and nephews.
13    I hope you still have some kind of relationship with
14    them, able to come out and enjoy a few years with them
15    and not do anything to harm yourself or anybody else.
16    And maybe those few years will be very satisfying.  I
17    hope they give you something to look forward to, give
18    you a little bit of peace in prison.  I know you know
19    how to operate in prison.  You have been in prison a
20    long time.  Sorry it had to end up this way, but I'm
21    sure I'm not as sorry as you are.  So not much else I
22    can say.  You're all set.
23        Fees and costs are waived.  And you have some
24    papers we're going to serve on you.
25        THE CLERK:  Record reflect I'm handing the
26    defendant notice of right to appeal judgment of
27    conviction; notice of right to have sentence reviewed;
```

8

| | |
|---|---|
| 1 | application for review; application for waiver of |
| 2 | fees, costs, and expenses, and appointment of counsel |
| 3 | on appeal; and notice of application. |
| 4 |     THE COURT: You're all set. Thank you. |
| 5 |     Okay. We're adjourned until tomorrow at ten. |
| 6 |     (The matter was concluded.) |

STATE OF CONNECTICUT, SUPERIOR COURT

JUDICIAL DISTRICT OF WATERBURY

In the Matter of:

* * * * * * * * * *x

STATE OF CONNECTICUT

    -Versus-                             : Case Number CR00-290382

JOSEPH BOOKLESS                          :

                                      : JUNE 12, 2002
* * * * * * * * * *x

C E R T I F I C A T I O N

    I hereby certify that the foregoing is a true and correct transcript of the stenographic notes of the proceedings in the hereinbefore entitled matter and reduced to typewriting by me, heard before Honorable Thomas V. O'Keefe, Jr., Judge, in the Superior Court, Judicial District of Waterbury, at Waterbury, on the 12th day of June, 2002.

    Dated at Waterbury, Connecticut, this 13th day of September, 2002.

                                      _____
                                      Patricia Sabol

                                      Certified Court Reporter